————o————

STATE TO USE OF J. C. GATES, *et al.*, Respondents, *vs.* THOS. FITZPATRICK, *et al.*, Appellants.

1. *Officer—Levy on property of B. on suit against A.—Bond, liability on, etc*—If on a writ of attachment against A., an officer levies on the property of B. he is guilty of official misconduct for which he and his sureties are liable, at the suit of B. on his official bond; and it would clearly be his duty to return the property to B. although it were taken from the possession of A.

2. *Bailment—Attachment, dissolution of sale of property in hands of bailee, effect of.*—Upon the dissolution of an attachment the officer becomes the bailee for the defendant (if he is the owner) not by contract but by operation of law.

In case of bailment by contract, a transfer by the bailor of the property and the right of possession, operates to transfer not merely the right of possession but the goods themselves, and thereafter the vendor's bailee becomes the bailee of the vendee, and the possession of the bailee is that of the purchaser. (Williams vs. Gray, 39 Mo. 205.)

3. *Attachment—Sale of property subject to—On dismissal of suit officer should turn property over to whom—Official bonds, liability on.*—After the dismissal of an attachment it is the duty of the officer at his peril to turn the property over to the true owner, who is *prima facie* the defendant in the attachment. But where pending the attachment, and subject thereto, defendant sells the property and the officer is notified of that fact, he must on dismissal of the suit deliver it to the vendee; and in such case he is not estopped from showing in a suit by the vendor that the latter had parted with his interest, even though the property had been seized while in the vendor's possession. And on the other hand, if after dismissal he return the property to the vendor so that the same is lost to the vendee, he will be liable therefor on his official bond.

4. *Bond—Judgment for amount assessed instead of judgment on penalty—Effect of practice—Supreme Court.*—Judgment for the amount assessed in an action on a bond, instead of judgment for its penalty with special execution for the amount assessed, will operate a reversal on appeal.

*Appeal from Jackson County Circuit Court.*

*White & Titus*, for Appellants.

It is not made the constable's duty by law to inquire into third persons' rights accruing from legal proceedings, wherein such persons are not parties. (See Armstrong vs. Langdon, 57 Mo. 353.) The defendant from whom goods are taken is the constable's principal, after the goods are ordered to be returned on dismissal of the action. Even were the law otherwise, he could only be liable for a breach of personal duty, and not upon his official bond in this action, there being no such privity between him and the relators as creates such official liability.

The bill of sale in evidence is invalid and should have been so declared by the court, as by its terms there was no delivery of the goods, actual or constructive, they being in the hands of the law. There was no price agreed on and no money paid. (See Brown Frauds, pp. 399, 406 ; Pluniman vs. Hartiborn, 13 Mass. 87 ; Bank of Rome vs. Matt, 17 Wend. 554.)

*Karnes & Ess*, for Respondents.

A sale of goods in the hands of a bailee, when the bailee is notified of it, is good even under tenth section of the fraudulent conveyance act. Much more will it be good where no creditor is complaining. The attachment was settled and the goods belonged to relators.

Hough, Judge, delivered the opinion of the court.

This was a suit upon a constable's bond given by the defendant Fitzpatrick as principal, with his co-defendants herein as sureties. Under a writ of attachment issued at the suit of the Goodyear Rubber Company, on the 24th day of February, 1873, by a justice of the peace in Jackson county, against one Aaron Mann, a certain stock of boots and shoes, the property of said Mann, was levied upon by the defendant Fitzpatrick, as constable.

On the 27th day of February, 1873, Mann executed a bill of sale by which he sold, assigned and transferred said boots and shoes to the plaintiffs herein, subject to said attachment, in payment of a debt due from him to the plaintiffs.

There was testimony tending to show that Fitzpatrick was informed by the plaintiffs of this bill of sale immediately after its execution.

In March, 1873, the attachment suit against Mann was dismissed, and the defendant Fitzpatrick delivered the property attached to Mann or his agents, whereby it was lost to the plaintiffs: and after an unsuccessful attempt to recover the same from Mann, they instituted the present action to recover from the defendant Fitzpatrick and his sureties, the value of said goods.

There was a verdict and judgment for plaintiffs from which the defendants have appealed to this court.

The defendants contend that it was the legal duty of Fitzpatrick, upon the dissolution of the attachment, to return the goods to Mann and not to his vendees—the plaintiffs herein; and that if plaintiffs have any right of action whatever against said Fitzpatrick, it is against him individually, and not upon his official bond.

Several minor objections are urged to the action of the court below at the trial, but the chief question is whether upon the facts stated the plaintiffs can maintain an action on the official bond of the constable?

The attachment did not alter the estate of Mann in the property levied upon, nor take away his right of alienation, and the plaintiff in the attachment suit acquired no property thereby; it only acquired a lien, and Mann could lawfully transfer the property subject to the lien. That he did in fact so transfer it is not disputed. If, after the dissolution of the attachment, the constable had delivered the property attached to the plaintiffs, we think it quite clear that Mann could not have maintained an action against the constable for his failure to return it to him, as the constable could have shown in defense that he, Mann, had sold and transferred the property and thereby parted with his right to the possession. (Drake Attach. § 294, and authorities cited.)

If this position be correct it necessarily follows that it was not the *absolute legal duty* of Fitzpatrick to return the property to Mann; for if it was, his delivery of it to another person, although such person might be the true owner, could constitute no defense.

But if it was not his official duty to return the property to Mann, after he had parted with his title and right of possession, does it follow that it was his official duty to deliver the property to Mann's vendee ?  Or was it simply optional with him whether he would do so or not?  The statute does not require that any order shall be made, when an attachment is dissolved, for the return of the property attached to the defendant in the attachment. Upon its dissolution the officer b·comes a bailee for the defendant, (if he is the owner,) not by contract, but by operation of law.  In case of a bailment by contract a transfer by the bailor of the property and right of possession undoubtedly operates to transfer *not merely a right* of action, but the goods themselves ; and thereafter the vendor's bailee becomes the bailee of the vendee ; and the possession of the bailee is that of the purchaser.  (Williams vs. Evans, 39 Mo. 205.)  Is this rule applicable to a case like the present ?  Where an officer has acquired possession of property by virtue of a writ of attachment ·which has been vacated or annulled, he continues to hold such property in his official capacity, and is officially responsible for its return to some one.  If under a writ of attachment against A., the officer levies upon the property of B., he is guilty of official misconduct for which he and his sureties are liable at the suit of B. upon his official bond.  (People vs. Schuyler, 4 Comst. 173 ; Archer vs. Noble, 3 Greenl. 418 ; Harris vs. Hanson, 11 Me. 241 ; Connack vs. Commonwealth, 5 Binn. 184 ; Forsyth vs. Ellis, 4 J. J. Marshall, 299 ; Commonwealth vs. Stockton, 5 Monroe, 192.)

In such case it would clearly be his official duty to return the property to the owner B., although it may have been taken from the possession of A.  If the plaintiff's goods had been seized under the writ of attachment against Mann and not returned to them, they could have maintained an action against the constable on his bond.  Then why not also when the property has become theirs after the seizure, but before the dissolution of the attachment, the officer being notified of the change of ownership ?  There would be as much privity between the parties in the one case as in the other.

Let us suppose that the officer should refuse to deliver the property either to the defendant in the attachment or his vendee, of whose claim he had notice, but should deliver it to a third party, whereby it should be lost to both, or should convert it to his own use, would he not be guilty of a breach of official duty? And if so, who could maintain an action for such breach? The defendant in the attachment manifestly could not, for he has no interest in the property and no right to the possession, and we have seen that the officer would not be estopped from showing this although the property may have been taken from him. The only person who could sue would be the owner of the property, the defendant's vendee. He would in such case undoubtedly be injured by the officer's breach of duty, and could, we think, maintain an action on his official bond. There can be no breach of official duty where no official duty exists, and if, therefore, it be the official duty of the constable, in the case supposed, to preserve the property for the vendee, then a delivery of it even to the defendant in the attachment, whereby it was lost, would also be a breach of his official duty.

It is urged by the appellants that it is not the duty of the officer to inquire into and decide upon the rights of third persons, not parties to the suit. And we are referred to the case of the State to the use of Armstrong vs. Langdon, 57 Mo. 353 , as sustaining this view. The decision in that case may be upheld upon the particular facts there stated ; but the court certainly did not intend to decide in that case that where the property of A. is seized under a writ of attachment against B., the officer would not be liable as such at the suit of A., and that A. would have no remedy but to interplead in the attachment suit. The books abound in cases showing that under such circumstances, replevin, trespass, or an action on the bond of the officer may also be maintained.

In all cases of seizure of personal property, under attachment, the officer is compelled to determine, at his peril; whether the property seized is that of the defendant in the writ. And after it comes to his possession he holds it as an officer for the true owner, whether such owner's right thereto accrued the day before the levy

of the writ or the day after. In either case, of course, after dissolution of the attachment, it would *prima facie* be his duty to return it to the person from whom it had been taken.

Our statutes provide no indemnity for the sheriff in such cases.

We are of the opinion that the present action was properly brought on the bond of the officer.

The remaining objections are purely technical and so need not be noticed.

The judgment in this case was only for the amount of the damages assessed and not for the penalty of the bond, with special execution as provided by law, and for this reason the judgment will be reversed and the cause remanded with directions to the circuit court to enter up the judgment required by the statute.

The other judges concur.