H. F. CADY, Appellant, v. W. W. COATES, Respondent.

St. Louis Court of Appeals, May 12, 1903.

1. **Rent, Action for:** COUNTERCLAIMS: INSTRUCTIONS. Where defendant pleaded four distinct counterclaims in a suit for rent, and instructions were given for both parties on the same theory of the case, plaintiff would not be entitled on appeal to object to the instructions given for the defendant that supplemented his own instructions and which but fairly instructed the jury on the issues involved in the trial.

2. ———: PRACTICE, APPELLATE. Evidence admitted without objection can not on appeal be objected to, on the ground that a finding based thereon, was erroneous.

3. ———: ISSUE SUBMITTED AT A PARTY'S INSTANCE BINDING THEREAFTER. Where an issue presented by a counterclaim was submitted at plaintiff's instance, he could not thereafter object that the evidence was insufficient to warrant its submission.

4. ———: QUESTIONS OF FACT FOR THE JURY. Where, on an issue as to a breach of a contract for the sale of an ice-cream privilege on exposition grounds, defendant contended that plaintiff had showed him what purported to be a copy of his contract with the exposition, and that such contract authorized but two stands on the ground, while the contract in fact gave plaintiff the right to maintain three stands on account of which defendant, who purchased one of them, was damaged, and there was also evidence that the copy of the contract on which defendant's contract was based, had been changed, and that he did not in fact know the exact terms of the true contract, *held*, that the question whether defendant was misled thereby was for the jury.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Covert & Covert* and *Connell & Ives* for appellant.

Again we say the Coates-Cady contract was made with direct reference to the primary contract with the

exposition company, and so far as its terms regulated what was to be done by Coates on the exposition grounds in the exercise of the concession granted by it, it was as much a part of the Coates-Cady contract as though it had been written into it. Calloway v. Henderson, 130 Mo. 77; Carr v. Luckland, 112 Mo. 462.

*Robert Lamar* and *Matthew Gering* for respondent.

(1)   The only assignment of error as appears from the motion for a new trial being that the verdict is not sustained by the evidence, the entire evidence should be before the court in an abstract, as provided by rule 15; and unless such abstract is furnished the court will not enter upon a voyage of discovery by reading the entire record, but will affirm the judgment. Costello v. Fessler, 80 Mo. App. 107; Grocery Co. v. May, 80 Mo. App. 300; Wood v. Kelly, 82 Mo. App. 598; Halstead v. Stone, 147 Mo. 649.   (2)   No principle of practice has a firmer hold upon the courts of this country than the one which denies the right of a litigant to invite error, or silently acquiescing therein, to speculate upon his chances, and then, after an adverse finding, assign the very error he was instrumental in trapping the trial court into for a reversal. Hill v. Myer Drug Co., 140 Mo. 433; Stewart v. Outhwaite, 141 Mo. 562; Horgan v. Brady, 155 Mo. 659; Cartin v. Haynes, 74 Mo. App. 34; Sowden v. Kessler, 76 Mo. App. 581; Gauntley v. Stead, 77 Mo. App. 155.

GOODE, J.—In the year 1896, plaintiff leased to the defendant the Dellone Hotel and furniture in the city of Omaha, Nebraska, for a term to commence July 20th, of that year, and to end December 31, 1898. The rent was paid, except for the months of September and October, 1898, and the purpose of this action is to recover $1,607 owing for those months. The defendant denied that he owed that much and set up four counterclaims in his own behalf. One of these was for

money expended in advertising the hotel, one-half of which the defendant alleges the plaintiff agreed to repay; another was for certain personal property belonging to the defendant, but charged to have been converted by the plaintiff. This item is inconsiderable and no point is made about it here.

The other two counterclaims grew out of a contract between the plaintiff and the defendant by which the former sold to the latter the right to conduct an ice-cream business on the grand court of the Trans-Mississippi Exposition grounds at Omaha. Cady had obtained a concession from the exposition company for the exclusive sale of ice-cream on the grounds. Coates bought an interest in that concession; he says, a half interest. His position is that the exposition company's contract with Cady either permitted the latter to sell ice-cream at only two stands or pavilions, one on the grand court and the other on the grand plaza, or that he (Coates) was made to believe such was the fact and so believing, to buy the right to occupy the one on the grand court. Cady's position as to this matter is that he had a concession to sell ice-cream on three different allotments of space and that Coates bought the privilege of one site with knowledge of the truth.

Cady ran two ice-cream pavilions during the exposition in breach of his agreement, according to Coates contention, and to the latter's damage in the sum of $2,000.

The other counterclaim rests on an alleged representation by Cady that Coates could build a suitable ice-cream pavilion for $700, which induced the latter to buy a half interest in Cady's concession; but when Coates attempted to build a pavilion of that kind, the exposition company interfered, compelled him to demolish it after it was partially constructed and to erect one costing $1,500. He alleges that thereby he lost $800, as the material of the building had to be disposed of for a trifle after the fair ended.

It should be stated that the exposition company reserved in its contract with Cady the right to pass on plans for the buildings he might erect, as all structures on the grounds had to conform to certain regulations in respect to appearance and size.

The jury found the issues for the plaintiff on his petition and assessed his damages at $1,607. They found the issues for the defendant on the four counterclaims and awarded damages as follows: For advertising the hotel, $250; for excess of cost in erecting ice-cream pavilion over the amount Cady represented it would be, $635; for defendant's damages on account of Cady's conducting two ice-cream stands, $1,600; for the conversion of personal property belonging to the defendant, $7.

The verdict on the whole case was in favor of the defendant in the sum of $875. Judgment having been entered accordingly, plaintiff appealed.

The several assignments of error pressed on our attention must all be overruled for the same reason, namely: that the plaintiff acquiesced in and invited the rulings of which he now complains.

At the conclusion of the evidence the court below gave an instruction of its own motion, but without any objection from either side, in which the theory of the case was defined. Said instruction told the jury that the plaintiff's suit was for the rent of the hotel and they should find for him in whatever sum the evidence showed the defendant was indebted to him. The instruction then explained the several counterclaims and that a separate finding was required on every one, with a separate assessment of damages for each finding in favor of the defendant.

Besides permitting that general outline of the jury's duty in dealing with defendant's counterclaims to pass unopposed, the plaintiff himself requested instructions which, instead of withdrawing any of the counterclaims from the jury's consideration, submitted

them all with advice as to the proof required to establish them.

Concerning the defendant's loss on account of the cost of the pavilion, the court, at plaintiff's request, instructed that the defendant was required to prove by the weight of evidence, that the plaintiff represented a building suitable for an ice-cream stand would not cost in excess of a specified sum; that the defendant relied on said statement in making the contract with the plaintiff and was afterwards required by the exposition company to build a pavilion which cost more.

As to the claim for advertising, plaintiff asked and the court gave a charge that it devolved on the defendant to prove the plaintiff made a contract with him to pay part of the cost of advertising the hotel, separate and distinct from the contract of lease; further, that if the jury believed the plaintiff allowed and the defendant accepted two months' rent in settlement of half the cost of advertising, plaintiff could not recover for that item.

On the counterclaim for plaintiff's alleged breach of an agreement to conduct only one ice-cream stand on the fair grounds, plaintiff tendered an instruction which the court gave, requiring the defendant to prove the plaintiff had represented and stated to him that the contract between the plaintiff and the exposition company provided for only two ice-cream stands, and that only two would be operated, or else that plaintiff furnished defendant with what purported to be his (plaintiff's) contract with the exposition company, showing the concession was for two stands; and that unless the defendant had proven one or the other of those acts on the part of plaintiff, there could be no recovery.

No requested instructions were refused, while those given at the defendant's instance were counterparts of the plaintiff's and presented the same propositions and issues from the defendant's standpoint; hence, if any error was committed in charging the jury as to the

law of the case, it is not now available in favor of the plaintiff. A party is confined on appeal to the positions he took during the trial. Hall v. Goodnight, 138 Mo. 576; Hill v. Drug Co., 140 Mo. 433; Guntley v. Staed, 77 Mo. App. 155; Pope v. Ramsey, 78 Mo. App. 157. And if his adversary's instructions were erroneous, but his own adopted the same theory, he is precluded from complaining that his adversary's were given. Christian v. Ins. Co., 143 Mo. 460; Sowden v. Kessler, 76 Mo. App. 581; Plummer v. City of Milan, 79 Mo. App. 439.

The testimony relating to the agreement to pay part of the cost of advertising has impressed us with the belief that the discussions on that subject were anterior to the execution of the lease and constituted part of the treaty or negotiation looking to the lease. If this was so, the written instrument was the only competent evidence of what the contract was, and another stipulation could not be engrafted on it by oral testimony. But the oral testimony was not objected to, and as the plaintiff chose to let it come in and afterwards to refer it to the jury for a decision as to whether it established an agreement distinct from the lease, he must abide by their finding. Berkson y. Cable Co., 144 Mo. 211; Dunlap v. Griffith, 146 Mo. 917; Price v. Hallett, 138 Mo. 461; Frankenthal v. Ins. Co., 76 Mo. App. 15.

For the same reason the verdict on defendant's claim for loss on his pavilion, because the plaintiff misrepresented what it would cost, must stand; though there was probably little merit in that cause of action. The court instructed the jury about it exactly as the plaintiff desired and prayed; so he can not be helped now even if he was entitled to judgment on that demand. If an issue is submitted to the jury at a party's instance, he may not afterwards complain of the lack of competent or sufficient evidence to warrant its submission, as has been directly adjudged in this State

more than once. Berkson v. Cable Co., Dunlap v. Griffith, supra. The plaintiff in no way challenged the competency or the sufficiency of the evidence introduced to prove the defendant's counterclaims.

We might properly dispose of the contention regarding the breach of plaintiff's alleged agreement to subject the defendant to the competition of no more than one ice-cream stand in the same way. But on this issue there was undoubtedly evidence for the jury to weigh, and on which their decision had to be taken. The plaintiff appeals to the fact that the contract between him and the exposition company, which he put in evidence, showed on its face that he had a concession from the company to occupy three lots or sites with ice-cream pavilions. This is true; but it is also true that three or four witnesses swore that the supposed copy of that instrument which the plaintiff gave to the defendant, and on which the latter contracted, described only two sites. This copy had been mislaid or lost and was not produced at the trial; but the evidence regarding it was so positive that unquestionably it was for the jury to say whether the defendant was misled. We can not sustain the plaintiff's contention that the original contract concludes the defendant's rights; for if, instead of furnishing a true copy, he furnished one which either by intention or mistake, put the concession to the plaintiff in a false light, he deceived the defendant, and the latter had the right to assert that he understood he was buying half of plaintiff's concession. The testimony is very strong, and comes from all the disinterested witnesses who knew anything about the arrangement between Cady and Coates, that the latter contracted for half of Cady's ice-cream privilege on the fair grounds, Cady agreeing only to operate one competing stand. The circumstance that Cady's contract with the exposition company allotted him three sites, is far from conclusive that the defendant was aware of the fact. It is true Cady signed Coates' bond to the

exposition company for the faithful performance of the former's undertaking under the concession contract, and that fact is now pointed to as proving that Coates knew the contents of the instrument. But it by no means proves he did beyond peradventure; for all the evidence tends to show a garbled contract was put into his hands. He may have signed Cady's bond without knowing the exact terms of the true contract. This matter was all for the jury and was left to them under appropriate charges.

Only one other point is made for reversal, which is that the evidence did not warrant so large an award of damages on account of Cady's breach in running two stands. The evidence as to the sales at the different ice-cream stands and how much Coates lost by Cady's wrongful competition was contradictory. The trial court gave a fair charge on how the damages, which can only be approximated, should be measured, and we are not prepared to hold the award is so opposed to the evidence that it must have been the outcome of partiality or prejudice; and we would have to believe it was to interfere. Parsons v. Railroad, 94 Mo. 208.

Finding no reversible error in the record, the judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.